**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ALECIA BRACCI, FREDERICK J.**
**NERONI, and TATIANA NERONI,**

                                        **Plaintiffs,**

        **vs.**                                                    **1:11-cv-1473**
                                                                   **(MAD/RFT)**

**CARL F. BECKER,** *in his official and*
*individual capacity Justice of New York*
*State, Delaware County Family Court,*
*Surrogate's Court, County Court, Acting*
*Justice of Supreme Court;* **ROBERT**
**MULVEY,** *in his official and individual*
*capacity Chief Administrative Judge of*
*New York State Court Administration, 6th*
*Judicial District;* **STATE OF NEW**
**YORK; and JONATHAN LIPPMAN,**
*Chief Judge of the State of New York,*

                                **Defendants.**


_____

**APPEARANCES:**                          **OF COUNSEL:**

**NERONI LAW OFFICE**                     **TATIANA NERONI, ESQ.**
203 Main Street
Delhi, New York 13753
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**                **CHRISTOPHER W. HALL, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs commenced this action on December 17, 2011, seeking declaratory, injunctive, and monetary relief for alleged violations of their constitutional rights. *See* Dkt. No. 1. On January 24, 2012, Plaintiffs filed an amended complaint. *See* Dkt. No. 5.

Currently before the Court are Defendants' motion to dismiss and Plaintiffs' motion to supplement their amended complaint.

## II. BACKGROUND

In this civil rights action, Plaintiffs have brought suit against three New York State judges and the State of New York. *See* Dkt. No. 5 at ¶¶ 7-10. Plaintiffs argue that Defendant Becker, an Acting Delaware County Supreme Court Justice, is the catalyst for this lawsuit. *See id.* at ¶ 11. Specifically, Plaintiffs claim that "[t]he essence of the case is a continuous and vicious pattern of retaliation by an obviously disqualified judge against an attorney and her clients and family members based on Plaintiff Tatiana Neroni's complaint against him to [the] Judicial Conduct Commission in December of 2010 asking to take Defendant Becker off the bench, and on arguments of bias and misconduct raised against [him] by Tatiana Neroni and Frederick J. Neroni in court pleadings, as well as based on the lawsuit filed against Defendant Becker on June 27, 2011 for discrimination and other misconduct." *See id.*[1]

In the December 2010 complaint filed against Defendant Becker with the Judicial Conduct Commission (the "Commission"), Plaintiff Tatiana Neroni alleged misconduct in nine

---

[1] On July 7, 2011, Plaintiff Frederick Neroni was disbarred for allegedly assisting a client (Andrew Mokay, Sr.) circumvent a court order. *See* Dkt. No. 5 at ¶¶ 93-94.

different cases presided over by Defendant Becker. *See id.* at ¶ 105. She requested that he be taken off the bench and that he no longer be appointed to serve as an Acting Supreme Court Justice. *See id.* Moreover, Plaintiff Tatiana Neroni asked the Commission to appoint a special investigator because the vice-chair of the commission was involved in one of the episodes of alleged misconduct. *See id.* According to Plaintiffs, their request for the "[a]ppointment of [a] special prosecutor was denied and the Commission refused to review well documented misconduct of Defendant Becker on the basis of alleged facial insufficiency." *See id.* Plaintiffs claim that there is no right to appeal a denial of a citizen complaint or "for the refusal of the Attorney General to file a writ of *quo warranto*." *See id.* at ¶¶ 106-07.

On June 27, 2011, Plaintiffs filed a lawsuit against Defendant Becker in Delaware County Supreme Court. *See id.* at ¶¶ 14, 109; Dkt. No. 1 at ¶ 52. In this state-court lawsuit, Plaintiffs are seeking injunctive, declaratory, and monetary relief "in cases where he was disqualified, where he acted in clear absence of all jurisdiction, where he acted outside of any court-related activity and where he acted in his administrative capacity." *See id.* at ¶ 14; Dkt. No. 1 at ¶ 52. Plaintiffs claim that the state-court lawsuit was brought in response to Defendant Becker's "misconduct and discriminatory actions toward Plaintiffs[.]" *See id.* at ¶ 53. Further, Plaintiffs assert that "[o]ne of the reasons for the lawsuit was that Defendant Becker usurped authority of the court clerk and got himself assigned to 100% of cases involving Plaintiffs Tatiana and Frederick Neroni as parties in an attempt to retaliate against them for their complaints against him and for raising issues of his misconduct, conflict of interest and disqualification and legitimacy as a judge." *See* Dkt. No. 5 at ¶ 15.

Plaintiffs claim that they have been unfairly sanctioned by Defendant Becker both before and after they commenced their state-court action. After the lawsuit was filed, Plaintiffs claim

that Defendant Becker sanctioned Plaintiff Tatiana Neroni in nearly every motion she filed in Supreme Court and in one case in Family Court. *See id.* at ¶ 110.  Plaintiffs claim that, since the state-court action was filed, Defendant Becker sanctioned Plaintiff Bracci $250.00 "for legitimate actions . . . and based on legitimate actions of . . . Tatiana Neroni in unrelated criminal actions, in unrelated and still pending Supreme Court actions, and for out-of-court Freedom of Information investigations pertaining personally to Defendant Becker which Defendant Becker admittedly tracked." *See id.* at ¶ 18.  Since the state-court action was filed, Defendant Becker has sanctioned Plaintiff Frederick Neroni over $30,700 in civil penalties, $8,000 in sanctions, and reduced the amount of attorney's fees he was due in several actions. *See id.* at ¶ 20.  Further, Defendant Becker began disciplinary proceedings against Plaintiffs Frederick and Tatiana Neroni for their actions in *Mokay v. Neroni*, Index No. 2007-695. *See id.* at ¶¶ 77-78.  Also, since the state-court action was filed, Defendant Becker has sanctioned Plaintiff Tatiana Neroni $13,000 in five different civil cases. *See id.* at ¶¶ 22, 110.

Plaintiffs also allege that Defendant Becker made several improper rulings in Plaintiff Bracci's family court case both before and after they filed the state-court action. *See id.* at ¶¶ 25-27.  Plaintiffs claim that, after Defendant Becker was assigned to Plaintiff Bracci's family court case in the summer of 2008, he improperly took away her custodial rights over her only child. *See id.* at ¶ 28.  Plaintiffs assert that Defendant Becker's custody determination and other actions in that case were the product of bias, a retaliatory motive, and because of a confrontation between Defendant Becker and Plaintiff Bracci's mother. *See id.* at ¶¶ 25-30, 41-42.  Some of Defendant Becker's allegedly improper conduct in Plaintiff Bracci's family court case includes the following: (1) Defendant Becker's failure to disclose a confrontation he had with Plaintiff Bracci's mother; (2) the removal of Plaintiff Bracci's "medical decision-making rights;" (3) the

4

refusal to exercise jurisdiction over Plaintiff Bracci's mother's petition; (4) the refusal to hear evidence of a death threat; and (5) the sanctioning of Plaintiff Bracci "for actions of third parties in unrelated court proceedings[.]"  *See id.* at ¶¶ 35-40, 45-46, 52-55.

In September of 2009, Defendant Becker recused himself from a child neglect case brought against Plaintiffs Tatiana and Frederick Neroni.  *See id.* at ¶¶ 69-70.  According to Plaintiffs, "[b]y doing so, Defendant Becker declared that he did not believe that he could be impartial towards Frederick J. Neroni or his family members."  *See id.* at ¶ 71.  Plaintiffs claim that "Defendant Becker was estopped from presiding in any cases where Frederick J. Neroni or his family members were parties or counsel because he was disqualified on the basis of a presumption of partiality that arose from his recusal in similar proceedings."  *See id.* at ¶ 72.  Further, Plaintiffs assert that "all of the above indicates that Defendant Becker was in bitter and running controversy with Frederick J. Neroni and his spouse Tatiana Neroni and could not possibly, as a matter of due process of law, be *the judge of his own impartiality* and continue to preside over cases where Frederick J. Neroni and Tatiana Neroni were attorneys or parties, but continued to do so."  *See id.* at ¶ 74 (emphasis in original).

Plaintiffs also allege that Defendant Becker showed his bias towards them in 2010 during Plaintiff Bracci's family court proceeding by instructing opposing counsel, in open court and on the record, that he "'expects'" him to file a complaint against Plaintiff Tatiana Neroni with the Attorney Grievance Committee for alleged unprofessional behavior.  *See id.* at ¶ 98.  Opposing counsel complied, but the Grievance Committee eventually found the claim "unsubstantiated." *See id.* at ¶ 99.  Finally, Plaintiffs claim that Defendant Becker failed to disclose a conflict of interest when he presided over cases brought by Plaintiffs Tatiana and Frederick Neroni against Delaware County.  *See id.* at ¶¶ 100-01.  Plaintiffs assert that Defendant Becker's conflict arises

from the fact that he represented Delaware County for twenty-seven (27) years prior to taking the bench. *See id.* at ¶ 101.

Plaintiffs' amended complaint contains eight causes of action against the individual Defendants in their official and individual capacities, as well as claims against the State of New York and the New York State Office of Court Administration ("OCA"). *See id.* at ¶¶ 137-322. Plaintiffs' claims include (1) retaliation in violation of the First Amendment against Defendant Becker; (2) defamation, *prima facie* tort, invasion of privacy, and abuse of legal process against Defendant Becker; (3) an attack on the constitutionality of New York State's statutory and regulatory scheme "governing judicial recusal, disqualification and discipline;" and (4) denial of due process. *See id.* Plaintiffs seek declaratory, injunctive and monetary relief. Specifically, Plaintiffs seek, among other things, (1) a declaration barring attorneys "who are members of the Judicial Conduct Committee from practicing law in the courts where the mere appearance of such an attorney may influence the court[;]" (2) a declaration that New York's failure to provide appellate review of the denial of a citizen complaint of judicial misconduct is unconstitutional; (3) a declaration "announcing that the Commission must make available to the complainants the full record of investigation on dismissal of the complaint against the judge, and should provide that the judge is not allowed to retaliate against such complainant; (4) an injunction barring Defendant Becker from presiding over cases in which they are involved and declaring that Defendant Becker "was disqualified and without authority to render *any* decisions in Plaintiffs' cases;" (5) a declaration that 22 N.Y.C.R.R. § 130 is "unconstitutional as introduced in violation of doctrine of separation of powers, being vague and overbroad on its face and as applied to Plaintiffs, punishing for conduct protected by due process and 1st Amendment, inventing civil causes of action and imposing criminal penalties without due process of law;" and (6) a

6

declaration that Defendants Mulvey and OCA's policy that a judge may preside over cases in which a party or attorney has filed a complaint against him with the Judicial Grievance Committee is unconstitutional.  *See id.*  Finally, Plaintiffs seek "nominal, actual and <u>punitive damages of $25,000,000.00</u> per each[.]"  *See* Dkt. No. 5-4 at pg. 4 (emphasis in original).


# III. DISCUSSION

A.      **Standard of review**[2]

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

---

[2] Although Defendants assert that they are bringing this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, it is clear that several of their arguments pertain to the Court's subject-matter jurisdiction.  As such, the Court will set forth the standards under both Rule 12(b)(6) and Rule 12(b)(1) and address each argument under the applicable standard.

claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief

above the speculative level," *see id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of "entitlement to relief."'"  *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct.

1955).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of

entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims

across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.[3]

---

[3] In Plaintiffs' memorandum of law in opposition to Defendants' motion to dismiss, Plaintiffs take issue with Defendants' recitation of the Rule 12(b)(6) standard and the precedents on which they relied.  *See* Dkt. No. 15-3 at 2-3.  Plaintiffs assert that "[t]here is no statutory requirement that causes of action have to be pled with specificity and particularity, so this is a judicial innovation in violation of the doctrine of separation of power, and any such attempts of judicial legislation and requirement of heightened pleading in a civil rights case is void and against legislative intent of such cases."  *See id.* at 3.

    In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court, applying the *Twombly* "plausibility" standard to a claim of unconstitutional discrimination and a defense of qualified immunity for a government official, observed that two principles inform the *Twombly* opinion: (1) "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions[;]" and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss;" a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79 (citation omitted).  Further, the Supreme Court held that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.* at 678 (citation omitted).

(continued...)

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id.* (internal citations omitted).  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

---

[3](...continued)

To the extent that Plaintiffs may be concerned that the Court is unfamiliar with the applicable standard on a motion to dismiss, they need not worry.  However, if Plaintiffs are attempting to assert that the "plausibility" standard set forth in *Iqbal* and *Twombly* is an unconstitutional act of "judicial legislation," their claim must fail.  Even if the Court agreed with Plaintiffs that the Supreme Court engaged in "judicial legislation" and created a heightened pleading standard contrary to what was intended in Rule 8 of the Federal Rules of Civil Procedure (which it does not), the Court is still bound by the Supreme Court's decisions until the legislature amends Rule 8, thereby abrogating the decisions, or until the Supreme Court reverses those decisions.  Although Plaintiffs are correct that there was "an extremely strong dissent" in *Iqbal*, "pointing out . . . that the heightened pleading standard was not required," *see* Dkt. No. 15-3 at 4, the lower courts are bound by the majority decision, not by the opinions expressed in dissenting opinions.  *See United States v. Brooks*, No. 06-CR-550, 2009 WL 3644122, *12 (E.D.N.Y. Oct. 27, 2009) (citations omitted); *City of Oneida, N.Y. v. Salazar*, No. 08-CV-0648, 2009 WL 3055274, *2 (N.D.N.Y. Sept. 21, 2009).

**B.     Judicial Immunity**

Defendants argue that the claims against Defendant Becker, Mulvey and Lippman should be dismissed because they are immune from suit through absolute judicial immunity. *See* Dkt. No. 10-2 at 10.[4]

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citation omitted). The 1996 Congressional amendments to §1983 further barred injunctive relief and provided that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996); *see also Montero v. Travis*, 171 F.3d 757 (2d Cir. 1999). Therefore, a judge is immune from all forms of suit unless the he has acted either beyond the judge's judicial capacity, or "in the complete absence of all jurisdiction." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 711 (S.D.N.Y. 2011) (citing *Mireles*, 502 U.S. at 11, 112 S. Ct. 286).

In determining whether or not the judge acted in the "clear absence of all jurisdiction," the judge's jurisdiction is to be construed broadly, "and the asserted immunity will only be overcome when the 'judge clearly lacks jurisdiction over the subject matter.'" *Bliven*, 579 F.3d at 209 (quoting *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988)). "Whether a judge acted in a

---

[4] To avoid confusion, anytime the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

'judicial capacity' depends on the 'nature of the act [complained of] itself, *i.e.*, whether it is a function normally performed by a judge, and [on] the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.'" *Ceparano v. Southampton Justice Court*, 404 Fed. Appx. 537, 539 (2d Cir. 2011) (quoting *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978)).  "Further, if the judge is performing in his judicial capacity, the 'judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the "clear absence of all jurisdiction."'" *Ceparano*, 404 Fed. Appx. at 539 (quotation omitted).  "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.'"  *Bliven*, 579 F.3d at 209 (quotation and other citation omitted).  While absolute judicial immunity does not bar claims for prospective injunctive relief, such relief is not available under § 1983 absent an allegation of a violation of a prior declaratory decree or that declaratory relief was unavailable.  *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (quotation omitted).

### 1. Defendant Mulvey

Plaintiffs "request nominal, actual, special and punitive damages" against Defendant Mulvey.  *See* Dkt. No. 5 at ¶ 322.  Further, Plaintiffs request injunctive, declaratory and prospective injunctive relief against Defendant Mulvey for assigning Defendant Becker to cases where Plaintiffs are parties and where Plaintiff Tatiana Neroni is an attorney.  *See id.*  Citing no authority, Plaintiffs argue that these actions are administrative and therefore outside the scope of judicial immunity.  *See* Dkt. No. 15-3 at 14.

Courts have held that the assignment of cases are judicial functions and are therefore

protected acts under judicial immunity.  *See Martinez v. Winner*, 771 F.2d 424, 434 (10th Cir.

1985) ("Although it is an 'administrative' act, in the sense that it does not concern the decision

who shall win a case, the assignment of cases is still a judicial function in the sense that it directly

concerns the case-deciding process. . . ."), *vacated on other grounds sub nom. Tyus v. Martinez*,

475 U.S. 1138, 106 S.Ct. 1787 (1986); *Parent v. New York*, 786 F. Supp. 2d 516, 532 (N.D.N.Y.

2011) ("The assignment of cases and issuance of consolidated orders are judicial functions. . ");

*see also Zahl v. Kosovsky*, No. 08 Civ. 8308, 2011 WL 779784, *9 (S.D.N.Y. Mar. 3, 2011)

(holding that the alleged manipulation of the case assignment system is protected by judicial

immunity).

  Defendant Mulvey is the Chief Administrative Judge for the 6th Judicial District, *see* Dkt.

No. 5 at ¶ 317; and, as Plaintiffs admit, Defendant Mulvey is "charged with administration of the

courts in his district, including assignment and reassignment of judges to cases."  *Id.* at ¶ 319.

Plaintiffs argue that Defendant Mulvey violated their rights under the Fifth and Fourteenth

Amendments to the United States Constitution when he, "under color of policy, refused to take

Defendant Becker off Plaintiffs' cases despite obvious bias" and disqualification, and despite

Defendant Becker's clear retaliation against them.  *See id.* at ¶ 320.

  As the case law discussed above makes clear, Defendant Mulvey's decision to assign

Plaintiffs' cases to Defendant Becker was clearly a judicial function.  As such, Defendant Mulvey

is immune from suit insofar as Plaintiffs seek relief for these actions.  Moreover, Plaintiffs could

have sought declaratory relief in state court, but either failed to seek such relief or their request

for relief was denied.  *See Flynn-Stallmer v. Stallmer*, 167 A.D.2d 575, 577-78 (3d Dep't 1990)

(denying petition seeking declaration that a family court judge improperly denied motion seeking

his disqualification or recusal); *Bank of Tokyo Trust Co. v. Urban Food Malls Ltd.*, 229 A.D.2d

14, 33-34 (1st Dep't 1996).  Therefore, declaratory relief was available to Plaintiffs and they have failed to allege that Defendant Mulvey violated a prior declaratory decree; and, therefore, to the extent that Plaintiffs are attempting to seek prospective relief against Defendant Mulvey, such claims are barred by judicial immunity.

Based on the foregoing, the Court finds that the claims against Defendant Mulvey involve actions he took while acting within his judicial capacity and, as a result, are afforded the protection of absolute judicial immunity as to the claims brought against him.

### 2. Defendant Lippman

Plaintiffs allege that Defendant Becker's actions were condoned by Defendant Lippman in his official capacity.  *See* Dkt. No. 5-3 at ¶ 283.  Beyond Plaintiffs' argument claiming that 22 NYCRR § 130-1.1 is unconstitutional (which will be addressed below), Plaintiffs allege no additional facts to show that Defendant Lippman has indeed condoned Defendant Becker's behavior or was even made aware of it.  Further, Plaintiffs fail to plead in non-conclusory terms that any alleged action taken by Defendant Lippman was done in the absence of all jurisdiction, that it violated a declaratory decree, or that declaratory relief was otherwise unavailable.  *See Huminski v. Corsones*, 386 F.3d 116, 139 (2d Cir. 2004) (citation omitted).  Therefore, as the aforementioned case law makes clear, Defendant Lippman is entitled to absolute judicial immunity.

### 3. Defendant Becker

Although Plaintiffs made numerous factual allegations against Defendant Becker, they generally concern his rulings and actions in various cases brought by Plaintiffs.  *See, e.g.,* Dkt.

No. 5 at ¶¶ 18, 20-21, 50, 110, 112, 115.  Plaintiffs allege that Defendant Becker made several

improper rulings, due to improper and retaliatory motives.  Further, Plaintiffs claim that

Defendant Becker admitted his bias against them when he withdrew from Plaintiffs Tatiana and

Frederick Neroni's neglect case and, therefore, improperly refused to recuse himself on cases

Plaintiffs brought after he admitted this bias.  *See id.* at ¶¶ 70-74.

Again, Plaintiffs have failed to put forth any non-conclusory assertions that plausibly

allege that Defendant Becker's conduct was anything but judicial in nature.  Accepting all of

Plaintiffs' allegations as true, they simply suggest that Defendant Becker may have acted with

malice towards them and perhaps exhibited bias against them.  Even if true, however, such

allegations are insufficient to overcome judicial immunity.  *See Huminski*, 386 F.3d at 138

(holding that allegations of bad faith and malice are insufficient to deprive the defendant of

judicial immunity, so long as the allegations pertain to actions taken in the defendant's judicial

capacity) (quotation omitted).

Moreover, Plaintiffs assert that Defendant Becker "omitted to reveal bases of his

disqualification on [the] record, while such bases were not known to [the] parties," and, therefore,

"he is not entitled to any immunities as he proceeded as a private lay individual and not a judge."

*See* Dkt. No. 15-3 at 5.  This conclusory assertion, unsupported by any legal authority, fails to

establish that Defendant Becker was not acting in his judicial capacity or that his actions were

done in the "'clear absence of all jurisdiction.'"  *Ceparano*, 404 Fed. Appx. at 539 (quotation

omitted).  At best, Plaintiffs' claims allege that he was acting with bias or maliciously, which is

insufficient to overcome absolute judicial immunity.

Further, Plaintiffs could have sought declaratory relief in state court, but either failed to

seek such relief or the request for this relief was denied.  *See Flynn-Stallmer*, 167 A.D.2d at 577-

78; *Bank of Tokyo Trust Co.*, 229 A.D.2d at 33-34.  As such, declaratory relief was available to Plaintiffs and they have failed to allege that Defendant Becker violated any prior declaratory decree; and, therefore, to the extent that Plaintiffs are attempting to seek prospective relief against Defendant Becker, such claims are similarly barred by judicial immunity.

## C.      The 11th Amendment

Defendants argue that several of Plaintiffs' claims must be dismissed because they are entitled to immunity under the Eleventh Amendment.

The Eleventh Amendment provides a state with sovereign immunity from suit.  *See Virginia Office for Protection and Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) (citation omitted).  "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State."  *Id.* at 1638 (citation omitted).  Generally, New York and its agencies enjoy sovereign immunity from suit in federal court under the Eleventh Amendment. *See Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (holding that the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities) (citation omitted).

In 1908, the Supreme Court decided *Ex parte Young*, 209 U.S. 123 (1908), which established an exception to the Eleventh Amendment sovereign immunity protection afforded to the states.  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Verizon Md., Inc. v. Pub. Serv. Com'n. of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed.2d 438

(1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)).

"Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of the law." *In re Dairy Mart Convenience Stores, Inc. v. Nickel*, 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 157). "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *In re Dairy Mart*, 411 F.3d at 373. Deciding whether or not a state official has violated federal law, however, "affects both the initial immunity inquiry as well as the ultimate decision on the merits." 17A James Wm. Moore *et al.*, *Moore's Federal Practice* § 123.40[3][a] (3d ed. 2004); *see also In re Dairy Mart*, 411 F.3d at 374. At this stage, the court's job is not to decide the merits of the claim, but "only determine whether [the plaintiff's] assertion that the [defendant's acts] resulted in a violation of federal law is . . . substantial and not frivolous[.]" *In re Dairy Mart*, 411 F.3d at 373.

To the extent that Plaintiffs' amended complaint seeks monetary relief and/or non-prospective injunctive relief against the individual Defendants in their official capacities, and against Defendants New York State and OCS, the Court finds that they are immune from suit pursuant to the Eleventh Amendment; and, therefore, grants this portion of Defendants' motion to dismiss.[5] *See Walker v. Connecticut*, 106 F. Supp. 2d 364, 369 (D. Conn. 2000) ("[I]n an action

---

[5] In their opposition to Defendants' motion to dismiss, Plaintiffs argue that "[t]he clear and unambiguous text of the 11th Amendment indicates that what is prohibited by the 11th Amendment is only lawsuits of citizens *of other states* and foreign countries against sovereign states." *See* Dkt. No. 15-3 at 5. Further, Plaintiffs argue that the "11th Amendment, on its face, does not prohibit suits in law or equity by citizens of a sovereign state *against its own state*, and the defense under the 11th Amendment must fail. Any case law, no matter how 'well settled', but which contradict[s] clear and unambiguous language of the U.S. Constitutional Amendment, are *ultra vires* and void[.]" *See id.* at 6 (citing *Marbury v. Madison*).

(continued...)

under 42 U.S.C. § 1983 'a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief . . . and may not include any award of damages which requires payment of funds from the State Treasury'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 677 (1974)).

**D.      Plaintiffs' claims for prospective injunctive relief**

Plaintiffs raise several causes of action seeking prospective relief against New York State

---

[5](...continued)

It is clear that had Plaintiffs conducted an objectively reasonable inquiry into Eleventh Amendment jurisprudence, they would have learned that naming New York State, a State agency, and a State official in his official capacity in a complaint seeking monetary damages are the quintessential situations where the Eleventh Amendment acts to deprive a federal court of subject matter jurisdiction. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). This is not a mercurial area of law, but has been definitively settled by the Supreme Court since 1890 with respect to actions against the state itself, *see Hans v. Louisiana*, 134 U.S. 1, 10 (1890), and 1945 with respect to actions against state agencies or state officials named in their official capacity. *See Gollomp v. Spitzer*, 568 F.3d 355, 367 n.10 (2d Cir. 2009) (citation omitted); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 462-63 (1945); *Edelman v. Jordon*, 415 U.S. 651, 662 (1974). Further, nowhere in the amended complaint or their opposition papers did Plaintiffs assert that Defendants waived their Eleventh Amendment immunity or that Congress expressly abrogated it. Finally, it is beyond dispute that, "[w]hile the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman*, 415 U.S. at 662-63 (citing cases).

Although Plaintiffs' arguments regarding the Eleventh Amendment span five pages, they fail to provide the Court with any relevant authority addressing why the Amendment is inapplicable to the present matter. The relentlessness of Plaintiffs' arguments regarding the Eleventh Amendment, *Twombly* and *Iqbal*, and the constitutionality of the *Younger* abstention doctrine and judicial immunity, bring to mind the words of Winston Churchill, which were recently quoted by the Second Circuit in a similar situation: "'never give in, never give in – never, never, never, never – in nothing, great or small, large or petty – never give in,' only without Churchill's final caveat, 'except to convictions of honor and good sense.'" *Gollomp*, 568 F.3d at 367 n.10 (quoting Never Give In! The Best of Winston Churchill's Speeches 307 (Winston S. Churchill, ed., 2003) (Address at Harrow School, October 29, 1941)). Although Plaintiffs may vigorously disagree with these well-settled areas of the law, their lengthy disagreement does not change the fact that the Court is bound by these well-settled principals.

regarding the regulation of its judicial system.  First, Plaintiffs contend that "New York State law governing judicial recusal, disqualification and discipline is unconstitutional. . . ."  *See* Dkt. No. 5 at ¶¶ 247-48 (emphasis omitted).  Within this claim, Plaintiffs request three declaratory judgments: (1) "preventing attorneys who are members of Judicial Conduct Committee from practicing law in the courts[;]" (2) declaring unconstitutional New York State law "which provide[s] that no appellate review of denial of citizen complaints for judicial misconduct is available;" and (3) "announcing that the Commission must make available to the complainants the full record of investigation on dismissal of the complaint against the judge, and should provide that the judge is not allowed to retaliate against such complainant."  *See id.* at ¶¶ 254-56.

Second, Plaintiffs contend that the "statutory, regulatory and court rule scheme of recusal and disqualification of judges in New York is unconstitutional. . . ."  *See id.* at ¶¶ 257-58 (emphasis omitted).  Within this claim, Plaintiffs request: (1) injunctive relief against Defendant Becker prohibiting him from presiding over their cases; (2) injunctive relief against the New York State Office of Court Administration ("OCA") forcing it to remove Defendant Becker from all of Plaintiffs' current cases; and (3) a declaration that Defendant Becker was disqualified and without authority to render decisions in Plaintiffs' cases.[6]  *See id.* at ¶ 288.

The last claim is against Defendants New York State, OCA, and Lippman, in his official capacity, and alleges that 22 N.Y.C.R.R. § 130-1.1(c)(2) and § 130-1.2 are unconstitutional.[7]  *See id.* at ¶¶ 289-290.  Plaintiffs claim that 22 N.Y.C.R.R. § 130 is void for vagueness, violates

---

[6] Since this claim does not seek prospective injunctive relief, it will be addressed in the section discussing the *Rooker-Feldman* doctrine.

[7] Although Plaintiffs claim that they are challenging 22 N.Y.C.R.R. § 130, the amended complaint and response to Defendants' motion to dismiss make clear that their challenge is directed specifically at 22 N.Y.C.R.R. § 130-1.1(c)(2) and § 130-1.2.  *See* Dkt. No. 5 at ¶¶ 292-93, 296-97, 300, 302, 304, 307.

substantive due process, and allows for penalties that are criminal in nature.  *See id.* at ¶¶ 293, 312-13.

Defendants assert that all three of these causes of action are barred under the Eleventh Amendment.  Defendants' argument is two-fold.  First, Defendants argue that "[t]he 11th Amendment bars the claims even though they seek prospective relief because they fail to state a claim and are frivolous."  Second, Defendants contend that "the 11th Amendment bars these claim[s], despite prospective relief sought, [ ] because they directly impact core sovereignty interests of New York State."  *See* Dkt. No. 10-2 at 15, 21.

### *1. Plaintiffs' challenge to New York State's judicial discipline laws and regulations*

"It is well settled that '[t]he federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions [of] law.'"  *Ross v. Bank of Am., N.A. (U.S.A.)*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006)) (other citation omitted); *see also* U.S. Const. art. III, § 2.  Standing is "'the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *Id.* (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)) (other citation omitted).  To establish constitutional standing under Article III, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision."  *Denney*, 443 F.3d at 263 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992)).[8]

---

[8] Although Defendants' have not challenged Plaintiffs' standing to challenge New York State's judicial discipline laws and regulations, the Court has an obligation to assure itself that

(continued...)

When presented in satisfaction of the injury-in-fact requirement, any threatened injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Coal. of Watershed Towns v. United States Envtl. Prot. Agency*, 552 F.3d 216, 217 (2d Cir. 2008) (citation omitted).  Elaborating on the redressability requirement, the Second Circuit has explained that "[r]edressability is the non-speculative likelihood that the injury can be remedied by the requested relief.  It must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court."  *Id.* at 218 (citation omitted).

As the Second Circuit has noted, where a crime victim brings suit contesting the non-prosecution of the alleged perpetrator, courts have found that the victim lacks standing to do so.  As explained in *United States v. Grundhoefer*, 916 F.2d 788 (2d Cir. 1990), in the context of a challenge to a restitution sentence, the court noted that "[t]he direct, distinct and palpable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced.  It is the defendant and he alone that suffers the direct consequences of a criminal conviction and sentence."  *Id.* at 791.  Since it is the subject of the prosecution who suffers "the direct injury," "a private citizen generally lacks standing 'to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.'"  *Id.* at 792 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973)).

While reaching the same result — that a complainant or a crime victim lacks standing to object to a failure to investigate or prosecute the accused — other decisions have found that the

---

[8](...continued)

Plaintiffs have Article III standing before deciding the merits of their claim.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (citation omitted).

complainant's injury is not fairly traceable to the failure to investigate, or that a prosecution or investigation would fail to redress the injury.  In *Matter of Appointment of Independent Counsel*, 766 F.2d 70 (2d Cir. 1985), for example, a construction company and its owner applied to have the court appoint an independent counsel to investigate statements made by Mario Montuoro to a grand jury, in which he accused the construction company of bribery.  *See id.* at 72.  The applicants sued when the government failed to indict Mr. Montuoro.  *See id.* at 72-73.  The Second Circuit recognized that the applicants were injured by Mr. Monturo's statements impugning their conduct, but found that the injury stemmed from the statements, rather than the government's decision not to prosecute.  *See id.* at 76.  Quoting *Linda R.S.*, the court noted that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Id.* at 75 (citation omitted).  Concluding that the "applicants have failed to demonstrate that their injuries are traceable to the government's failure to prosecute," the court found that the applicants lacked standing.  *See id.* at 76.  Moreover, the court found that the complaint was not redressable because the government investigation that the applicants sought "would only result in the jailing of Montuoro, not in financial recompense" for the plaintiffs.  *See id.*; *see also Ponton v. U.S. Court of Appeals*, Civ. No. 10-2213, 2011 WL 1045035, *3 (E.D. Pa. Mar. 22, 2011) (holding that "[w]hether or not Plaintiff's complaint of judicial misconduct would result in any disciplinary action against another is not sufficient injury to create standing. . . .  Consequently, the Court concludes that Plaintiff's Complaint does not allege a cognizable injury to create standing" (internal citation omitted)).

In the present matter, the Court finds that Plaintiffs lack standing to challenge the following: (1) the policy which allows attorneys who are members of the Judicial Conduct Committee from practicing law "in the courts where the mere appearance of such an attorney may

influence the court;" (2) the New York State law "which provide[s] that no appellate review of

denial of citizen complaints for judicial misconduct is available;" and (3) the policies of the

Judicial Conduct Committee regarding the confidentiality of their records of investigation.  *See*

Dkt. No. 5 at ¶¶  254-56.  The law makes clear, a private citizen does not have standing to initiate

or maintain a disciplinary proceeding against an attorney or a judge, or to appeal if the court or

commission declines to discipline, *see In re Attorney Disciplinary Appeal*, 650 F.3d 202, 203-04

(2d Cir. 2011) (citing cases); and, therefore, Plaintiffs lack a legally cognizable interest in the

disciplinary proceedings that follow the filing of a grievance, just as a crime victim lacks

standing to challenge the decision not to prosecute.  *See Weisshaus v. New York*, No. 08 Civ.

4053, 2009 WL 2579215, *4 (S.D.N.Y. Aug. 20, 2009).

Further, as to the relief Plaintiffs seek regarding attorneys on the Judicial Conduct

Committee practicing before judges who may or have appeared before them, Plaintiffs fail to

provide an injury that is real and non-speculative.  *See Mosby v. Ligon*, 418 F.3d 927, 933-34

(8th Cir. 2005).  The fact that Plaintiffs may be injured at some unspecified point in the future

because a judge will seek to curry favor with a member of the Judicial Conduct Committee is

insufficient to provide them with Article III standing.  *See id.* (citation omitted).

Based on the foregoing, the Court finds that Plaintiffs lack standing to challenge these

laws and determinations.

### 2. *Injunctive relief against Defendant Becker restraining him from presiding over cases brought by Plaintiffs in the future and against Defendant OCA forcing it to remove Defendant Becker from all current cases*

Plaintiffs seek an injunction precluding Defendant Becker from presiding over cases in

which they are a party or in which Plaintiff Tatiana Neroni is an attorney to one of the parties.

Further, Plaintiffs seek injunctive relief requiring Defendant OCA to remove Defendant Becker

from all current proceedings in which Plaintiffs are involved.

As the Supreme Court recognized in *O'Shea*, allegations that assert future injury based on speculation about future conduct by a defendant not only bear on the issue of standing, but also implicate principles of federalism and comity. *See O'Shea v. Littleton*, 414 U.S. 488, 500 (1974). The doctrine of "comity abstention" has two facets. *See Cicero v. Olgiati*, 426 F. Supp. 1213, 1218 (S.D.N.Y. 1976). Under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, federal court abstention is justified where pending state court proceedings may afford an immediate opportunity for resolution of the plaintiff's federal claims. *See Spargo v. N.Y. State Com'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (citation omitted). Additionally, as the Supreme Court recognized in *O'Shea* and *Rizzo*, comity abstention may be warranted even where no state proceedings are pending. *See O'Shea*, 414 U.S. at 500; *Rizzo v. Goode*, 423 U.S. 362, 377-80 (1976). In this latter line of cases, the Supreme Court focused not on the substantive issues *per se*, but rather on the nature of the relief sought. Under the law and policy set forth in these cases, where the equitable relief sought would inappropriately require the federal court to supervise institutions central to the state's sovereignty, it should not be entertained. *See O'Shea*, 414 U.S. at 500-02; *Rizzo*, 423 U.S. at 377-80.

In *O'Shea*, the Supreme Court held that

> recognition of the need for a proper balance in the concurrent operation of federal and state courts counsels restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is "both great and immediate." . . . In holding that 42 U.S.C. s 1983 is an act of Congress that falls within the "expressly authorized" exception to the absolute bar against federal injunctions directed at state court proceedings provided by 28 U.S.C. s 2283, the Court expressly observed that it did not intend to "question or quali[f]y in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding."

*O'Shea*, 414 U.S. at 499 (internal quotation and citations omitted).

In the present matter, as in *O'Shea*, Plaintiffs are seeking injunctive relief against future injury based on speculation about Defendant Becker's future conduct.  Plaintiffs seek an injunction aimed at "controlling or preventing the occurrence of specific events that might take place" in the course of future trials.  *See id.* at 500.  In light of *Younger*, *O'Shea* and their progeny, it is clear that principles of comity and federalism dictate that the Court must abstain from granting Plaintiffs the relief they seek.

Other federal courts have likewise abstained where the relief sought would require equitable intervention that is both "intrusive and unworkable."  For example, in *Wallace v. Kern*, 520 F.2d 400, 405-06 (2d Cir. 1975), the Second Circuit invalidated a district court's injunction providing for new bail hearing procedures, given that such relief would require precisely the sort of federal court surveillance forbidden by *O'Shea* and *Younger*.  Similarly, in *Parker v. Turner*, 626 F.2d 1 (6th Cir. 1980), the court was faced with the question of whether it should apply the *Younger* principles of comity and federalism to bar relief solely because of the likelihood of substantial interference in state proceedings.  Relying on the Supreme Court's decisions in *O'Shea* and *Rizzo*, the court held that the exercise of equitable restraint was not only appropriate, but necessary.  *See id.* at 7.  Specifically, the court found that the relief sought – an injunction requiring the juvenile court to adhere to due process requirements – required the type of daily monitoring of state trials rejected in *O'Shea*.  *See id.*  Moreover, in discussing its invocation of the abstention doctrine, the *Parker* court observed that when the state agency involved in the dispute is a state court, as is the case here, the equitable restraint considerations "appear to be nearly absolute."  *Id.*  In so finding, the court noted that in *O'Shea*, the Supreme Court extended the "near-absolute restraint rule" set forth in *Younger* "to situations where the relief sought would

interfere with the day-to-day conduct of state trials." *Id.* at 8.

In *Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006), after losing several appeals before the New York State Appellate Division, Second Department, the plaintiff filed a federal suit seeking the following relief: (i) a declaration that the system for assigning cases among panels of judges in the Second Department of the Appellate Division violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment; (ii) an injunction requiring the New York state legislature to establish a new system of assigning appeals in the Second Department; (iii) vacatur of a number of Second Department decisions adverse to the plaintiff; and (iv) vacatur of sanctions the Second Department had imposed on the plaintiff. *See Kaufman*, 466 F.3d at 85. Affirming the district court's dismissal of the action, the Second Circuit chose to abstain from deciding the case because the relief sought "would be . . . intrusive in the administration of the New York court system." *Id.* at 86 (citing *O'Shea v. Littleton*, 414 U.S. 488, 500, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974)). Writing for the court, Judge Ralph Winter noted as follows:

> In *Younger*, the Supreme Court explained that, in our federal system, a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger* was a challenge to an ongoing criminal case, but the doctrine has been extended with equal force to federal civil litigation challenging certain other state proceedings.

*Id.* (citations omitted).

The Second Circuit expressly noted that "'under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts.'" *Id.* at 86-87 (quotation and other citation omitted). The court further held that "the federal courts cannot 'legislate and engraft new procedures upon existing'" state practices, and that such interference by the federal court "would violate principles of comity established in *Younger*." *Id.* (quotation

omitted).  Finally, the court noted that "[a]bstention is appropriate where the plaintiff has an opportunity to raise and have timely decided by a competent state tribunal the constitutional claims at issue in the federal suit."  *Id.* at 87 (citation omitted).

The above authority makes clear that abstention is appropriate in the present matter.  As the Second Circuit held in *Kaufmann*, relevant to the Court's determination that abstention is appropriate is the fact that, like the plaintiffs in both *O'Shea* and *Turner*, Plaintiffs here have other adequate means of redress in the state courts.  Even accepting Plaintiffs' contentions regarding Defendant Becker's bias and hostility towards them, such claims are addressable by the state appellate process.

Finally, the Court finds not only that the requested relief is intrusive and unmanageable, but also that the area in which Plaintiffs ask this Court to intervene is one central to state sovereignty.  As an initial matter, state-court proceedings need not be criminal in order to be of significant importance to the state.  *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).  Rather, "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation."  *Id.* (citation omitted).  It is clear that Plaintiffs' claims in the present case go to the very core of the functioning of the New York State court system.  Thus, this case falls squarely within the reasoning of *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 13-14 (1987), in which the Supreme Court "recognized that the States have important interests in administering certain aspects of their judicial systems."

Accordingly, the Court finds that Defendant New York State's interest in the administration and application of New York judicial recusal and disqualification laws are sufficiently important and within the scope of cases in which abstention is warranted.  Therefore,

it is the judgment of the Court that considerations of equity, comity and federalism compel the conclusion that this case does not present proper grounds for the granting the requested equitable relief.[9]

### 3. Constitutionality of 22 N.Y.C.R.R. § 130-1.1(c)(2) and § 130-1.2

Plaintiffs' third cause of action, which Defendants argue should be dismissed under the Eleventh Amendment, asserts that 22 N.Y.C.R.R. § 130-1.1(c)(2) and § 130-1.2 are unconstitutional. Dkt. No. 5 at ¶¶ 289-290. This cause of action is against Defendants New York, OCA, and Lippman in his official capacity. *See id.*

Defendants argue that Defendant Lippman is not a proper party to this claim because he neither promulgated the regulations, nor enforces them. *See* Dkt. No. 10-2 at 19. Defendants assert that, "[u]nder *Ex Parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart*, 411 F.3d at 372-373 (quoting *Ex Parte Young*, 209 U.S. at 154, 157, 28 S. Ct. 441).

Plaintiffs are specifically contesting part 130 (22 N.Y.C.R.R. §§ 130.1.1, 1.2), which is contained within Subchapter "C," Rules of the Chief Administrator of the Courts. The Rules in Subchapter C are promulgated and enforced by the Chief Administrator of the Courts, not the

---

[9] The Court notes that, in a related action pending in the Northern District of New York, which was filed after the present matter, counsel for Defendant Becker submitted a letter from Defendant Becker to Justice Mulvey dated August 24, 2012. *See Neroni v. Becker*, No. 3:12-cv-1226, Dkt. No. 7-3. In this letter, Defendant Becker informs Justice Mulvey, who is the Chief Administrative Judge for the Sixth Judicial District, that he is recusing himself "in all actions, proceedings and other matters involving Frederick J. Neroni and/or Tatiana Neroni, Esq., in all the various courts in which I preside." *See id.* In light of this letter, it appears that the relief requested by Plaintiffs preventing Defendant Becker from presiding over cases they bring in the future is now moot.

Chief Judge.  *See* 22 N.Y.C.R.R. § 80.1; *see also Levine v. McCabe*, No. 03 CV 6420, 2007 WL

4441226 (E.D.N.Y. Dec. 17, 2007) (citation omitted).

   Defendant Lippman is not the Chief Administrator of the New York Courts, but instead

holds the separate position of Chief Judge.  *See* 22 N.Y.C.R.R. §§ 1.0-1.2.  Since Defendant

Lippman does not enforce any part of 22 N.Y.C.R.R. §§ 130-1.1, 1.2, he lacks the necessary

connection to be a proper party to this claim.  *See Dairy Mart*, 411 F.3d at 372-73.  Accordingly,

insofar as Plaintiffs seek to hold Defendant Lippman liable for the enforcement of the

aforementioned sections, the claim is dismissed.  Although Plaintiffs have failed to bring suit

against the proper party, in the interests of judicial economy, the Court will still address the

merits of this claim.

   Plaintiffs claim that sections 130-1.1 and 130-1.2 are unconstitutional because they are

void for vagueness and violate due process.  *See* Dkt. No. 5 at ¶¶ 293, 311-312.  It is well settled

that "[t]he Due Process Clause of the Fourteenth Amendment requires that laws be crafted with

sufficient clarity to 'give the person of ordinary intelligence a reasonable opportunity to know

what is prohibited' and to 'provide explicit standards for those who apply them.'"  *Betancourt v.*

*Bloomberg*, 448 F.3d 547, 552 (2d Cir. 2006) (quoting *Grayned v. City of Rockford*, 408 U.S.

104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972)).  "In other words, in order to survive a

vagueness challenge, a rule must both provide adequate notice to those who are governed by it

*and* adequately cabin the discretion of those who apply it."  *Farid v. Ellen*, 593 F.3d 233, 243 (2d

Cir. 2010) (emphasis in original).

   Plaintiffs appear to argue that section 130-1.1(c) was not crafted with sufficient clarity,

and, therefore, a person of ordinary intelligence could not understand what is prohibited.  *See*

Dkt. No. 5 at ¶¶ 293-296.  Contrary to Plaintiffs' assertions, section 130-1.1(c) specifically

outlines exactly what type of conduct is sanctionable with sufficient clarity to withstand a vagueness challenge.

> Specifically, section 130-1.1(c) provides that conduct is "frivolous" when,
>
> > (1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law;
> >
> > (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or
> >
> > (3) it asserts material factual statements that are false.
> >
> > Frivolous conduct shall include the making of a frivolous motion for costs or sanctions under this section.  In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.

22 N.Y.C.R.R. § 130-1.1(c).  Section 130.1.2 simply provides that the court must provide in writing why it has decided to award costs or sanctions (or both) for "frivolous" conduct and its justification for the amount imposed.  This language, which clearly delineates what type of conduct is sanctionable under this section, is undoubtedly crafted with sufficient clarity such that a person of ordinary intelligence would understand what is prohibited.  *See Farid*, 593 F.3d at 243 (citation omitted).

Plaintiffs may also survive dismissal by showing that section 130-1.1(c) does not "provide explicit standards" for those applying it, *see Betancourt,* 448 F.3d at 552, which Plaintiffs have also failed to do.  In fact, Plaintiffs have failed to present the Court with any arguments or relevant legal authority whatsoever relating to the allegation that section 130-1.1(c) is void because of vagueness.  *See* Dkt. No. 15-3 at 5-9.

Plaintiffs also ask the Court to declare section 130-1.1(c) unconstitutional because it violates procedural and substantive due process.  *See* Dkt. No. 5 at ¶ 312.  "The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'"  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464-65 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (internal quotation marks omitted), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)).  "The commonsense principle at the heart of the due process guarantees in the United States and New York Constitutions is that when the State seeks to take life, liberty or property from an individual, the State must provide effective procedures that guard against an erroneous deprivation."  *People v. David W.*, 95 N.Y.2d 130, 136 (2000) (citing U.S. Const., Amend. XIV, § 1; N.Y. Const., art. I, § 6; *Mathews v. Eldridge*, 424 U.S. 319, 334-335, 96 S. Ct. 893, 47 L. Ed. 2d 18; *Wisconsin v. Constantineau*, 400 U.S. 433, 436, 91 S. Ct. 507, 27 L. Ed. 2d 515).  A state may satisfy due process with either pre-deprivation remedies or post-deprivation remedies.  *See Rivera-Powell,* 470 F.3d 458, 465 (2d Cir. 2006) (citation omitted).

In Plaintiffs' amended complaint, they specifically complain of one instance when section 130-1.1(c) sanctions were imposed on Plaintiff Tatiana Neroni by Defendant Becker in the case *Shields v. Carbone*, No. 2009-440.  *See* Dkt. No. 5 at 6, ¶ 22.  As the recent Third Department decision reports, Plaintiff Neroni was afforded both pre- and post-deprivation remedies in relation to the imposed sanctions.  *See Shields*, 99 A.D.3d at 1102-03.  Before Defendant Becker imposed sanctions under section 130.1.1(c), "[t]he court [ ] ordered Neroni to show cause as to why an order should not be entered against her imposing sanctions 'for gratuitous allegations of misconduct and threats against this court contained in her reply affirmation, dated March 14,

30

2011.'"  *Id.* at 1101.  Then, once the sanctions were imposed upon her, Plaintiff Tatiana Neroni appealed to the Appellate Division, Third Department, where the court found that Defendant Becker did not abuse his discretion.  *See id.* at 1103.

Based on the foregoing, even if *Rooker-Feldman* did not preclude Plaintiffs' as-applied challenge to the regulations at issue, the Court finds that their due process rights were not violated.  Plaintiffs were afforded a pre-deprivation hearing in the form of an order to show cause, and post-deprivation rights in the form of an appeal to the Third Department, which is more than sufficient to satisfy the requirements of due process.  Furthermore, Plaintiffs have not shown the Court that the remedies available to them in *Shields v. Carbone* were not available to them in the other proceedings in which section 130-1.1(c) sanctions were imposed upon Plaintiffs.  As such, the Court finds that 22 N.Y.C.R.R. §§ 130-1.1(c) and 130-1.2 are not void for vagueness and do not run afoul of the Due Process Clause of the Fourteenth Amendment.  *See United States v. Decastro*, 682 F.3d 160, 163 (2d Cir. 2012) (holding that a litigant "who fails to demonstrate that a challenged law is unconstitutional as applied to him has 'necessarily fail[ed] to state a facial challenge, which requires [him] to establish that no set of circumstances exists under which the statute would be valid'" (quotation omitted)).

E.      **Declaration that Defendant Becker was disqualified and without authority to render decisions in Plaintiffs' cases**

"The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment."  *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (citation omitted).  "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Id.*

In *Exxon Mobil*, the Supreme Court held that the *Rooker-Feldman* doctrine "is confined to case of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceeding commenced and inviting district court review and rejection of those judgments." *Exxon Mobile Corp., v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  In light of *Exxon Mobile*, the Second Circuit has held that "there are four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies."  *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (citation omitted).

> "First, the federal court plaintiff must have lost in state court.
> Second, the plaintiff must 'complain[ ] of injuries caused by [a]
> state-court judgment [.]'  Third, the plaintiff must 'invite district
> court review and rejection of [that] judgment[ ].'  Fourth, the state-
> court judgment must have been 'rendered before the district court
> proceedings commenced' - i.e., *Rooker-Feldman* has no application
> to federal-court suits proceeding in parallel with ongoing state-
> court litigation."

*Green*, 585 F.3d at 101 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).  "The first and fourth requirements 'may be loosely termed procedural,' while the second and third requirements 'may be termed substantive.'"  *Id.*

Insofar as Plaintiffs request that this Court declare the state-court sanctions ordered by Defendant Becker void and enjoin their enforcement, *see* Dkt. No. 5 at ¶¶ 239-241; Dkt. No. 15-3 at 12, the *Rooker-Feldman* doctrine forbids this result.  All four elements of *Rooker-Feldman* are met — Plaintiffs are asking this Court to overturn a state-court judgment affirming the sanctions imposed upon them.  *See Shields*, 99 A.D.3d 1100.  Since Plaintiffs' claim is inextricably intertwined with the state-court proceeding, the Court finds that it is barred by the *Rooker-Feldman* doctrine.  *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 167. (E.D.N.Y. 2010) (citation omitted).

Plaintiffs also request the Court to order relief "preclud[ing] Defendant Becker from presiding over Plaintiffs' cases and to preclude the New York State Court Administration from keeping Defendant Becker assigned to cases where Plaintiff Tatiana Neroni is attorney of record[.]"  As to this claim, the first and fourth "procedural" requirements have been met. Plaintiffs appealed the issue of whether Defendant Becker should be assigned to preside over a specific case of hers.  *Shields*, 99 A.D.3d at 1102-03.  The Appellate Division disagreed with Plaintiffs and held that "[a]bsent legal disqualification (*see* Judiciary Law § 14), which did not exist here, a judge may determine for himself or herself whether recusal is warranted, and a decision in that regard will only be overturned if there was an abuse of discretion."  *Id.* at 1102 (citing *Mokay v. Mokay*, 67 A.D. 3d 1210, 1213 (3d Dep't 2009).

The second element requires this Court to determine "whether the federal-court plaintiff's claims arise from injuries caused by a state-court judgment."  *Forjone v. Federated Financial Corp. of America*, 816 F. Supp. 2d 142, 147 (N.D.N.Y. 2011).  In determining this element, the Second Circuit has instructed that

> a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock*, 422 F.3d at 88.

Plaintiffs request the declaration in this action because of the injuries caused by Defendant Becker's and then the Appellate Division's judgment in *Shields v. Carbone* and other similar actions in which Defendant Becker imposed sanctions and refused to recuse himself.  *See Shields*, 99 A.D.3d at 1102-03; *M&C Bros., Inc. v. Torum*, ___ N.Y.S.2d ___, 2012 WL

6199940, *1 (3d Dep't 2012) (upholding Defendant Becker's decision to impose sanctions on Plaintiff Tatiana Neroni for her "pattern of noncompliance, failure to offer a reasonable excuse for either their default or the violation of the underlying conditional preclusion order, multiple motions to vacate the default, and the lack of any substantive response to plaintiff's request for sanctions") (citations omitted); *Adams v. Bracci*, 100 A.D.3d 1214 (3d Dep't 2012) (upholding Defendant Becker's denial of Plaintiffs' motion for recusal and his decision to sanction Plaintiff Bracci).  In *Shields*, the Appellate Division affirmed the sanctions imposed by Defendant Becker. *See id.*  As a result of that judgment and the initial sanctions by the lower court, Plaintiffs now ask this Court for the declaration that would prevent Defendant Becker from presiding over any future cases brought by Plaintiffs.  *See id.*  If this Court were to grant the requested relief, the Court would in effect be declaring that Defendant Becker is not able to preside over Plaintiffs' cases impartially, directly rejecting the Appellate Divisions decision that affirmed the fact that Defendant Becker was able to preside over Plaintiffs' case impartially and that absent legal disqualification, a judge may decide for himself whether recusal is warranted.  *See id.*  Therefore, to the extent that Plaintiffs ask this Court to reject the decision of the Appellate Division in *Shields*, the *Rooker-Feldman* doctrine precludes such relief.

Moreover, to the extent that Plaintiffs are challenging other unspecified sanctions, orders, and acts of bias by Defendant Becker that were not appealed to the Third Department, such claims are similarly barred by the *Rooker-Feldman* doctrine.  The remedy available to Plaintiffs for Defendant Becker's alleged unconstitutional conduct in the state-court proceedings was to appeal within the state-court system and ultimately to the United States Supreme Court, not a collateral attack in the lower federal courts.  *See Davis v. United States*, 499 F.3d 590, 595 (6th Cir. 2007) (citation omitted).

**F.      The *Younger* Abstention**

Defendants challenge Plaintiffs' request for injunctive and declaratory relief on the basis

of the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).  Under *Younger*,

federal courts must abstain from enjoining pending civil suits and "allow state courts to resolve

pending matters within their jurisdiction."  *Washington v. County of Rockland*, 373 F.3d 310, 318

(2d Cir. 2004) (citation omitted).

Plaintiffs primarily argue that the *Younger* abstention doctrine is unconstitutional and

therefore void under Chief Justice Marshall's seminal decision in *Marbury v. Madison*, 5 U.S.

137 (1803).  Although *Marbury* does establish judicial review, and that unconstitutional laws

may be struck down by the courts, *Marbury* does not aid Plaintiffs in their substantive argument.

*Marbury* provides this Court with the power to find a law unconstitutional, but it does not

provide the Court with the ability or a reason to find the *Younger* abstention doctrine

unconstitutional, which, as discussed, is binding Supreme Court precedent that this Court is

required to follow.  As such, the Court finds that Plaintiffs' argument is without merit.

"*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that

implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an

adequate opportunity for judicial review of his or her federal constitutional claims."  *Spargo v.

N.Y. State Com'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (citation omitted).  Further,

"if a court finds that abstention is proper, it may dismiss the case, or otherwise, stay the

proceedings pending a resolution of the state court action."  *Kunz v. New York State Com'n on

Judicial Conduct*, 356 F. Supp. 2d 188, 193 (N.D.N.Y. 2005); *see also Diamond "D" Constr.

Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citation omitted).

In this case, there is no dispute that the first two requirements for *Younger* are satisfied. On June 27, 2011, Plaintiffs filed suit against Defendant Becker in Delaware County Supreme Court, Index No. 2011-714.  *See* Dkt. No. 1 at ¶ 52 ; Dkt. No. 5 at ¶ 109.  Plaintiffs assert that the state-court case was "commenced . . . against Defendant Becker, in his individual capacity, for misconduct committed in his judicial capacity outside of all jurisdiction, and for various ministerial acts, as well as for injunctive and declaratory relief for acts committed in his judicial capacity."  *See* Dkt. No. 5 at ¶ 14.  The suit was prompted by Defendant Becker "usurp[ing] . . . the court clerk and . . . assign[ing] himself . . . 100% of cases involving Plaintiffs Tatiana and Frederick Neroni as parties in an attempt to retaliate against them for their complaints [against him]. . . ."  *See id.* at ¶¶ 15, 131.  Plaintiffs' complaint was dismissed in a Decision and Order of Hon. James C. Tormey, J.S.C., dated January 13, 2012.  *See Bracci et al. v. Becker*, No. 2011-0714 (N.Y. Sup. Ct. 2012); Dkt. No. 10-1 at 8-19.  Plaintiffs filed a notice of appeal to the Appellate Division of the Supreme Court, Third Department, dated February 22, 2012.  *See Bracci et al. v. Becker*, No. 2011-0714 (N.Y. Sup. Ct. 2012); Dkt. No. 10-1 at 5.  The Appellate Division has not yet issued a decision regarding Plaintiffs' appeal; and, therefore, the matter is still pending in the state-court system.

Plaintiffs argue that this Court should not abstain because the lawsuit that was commenced against Defendant Becker in Delaware County Supreme Court was filed before the sanctions were imposed upon Plaintiffs Tatiana Neroni and Alecia Bracci and therefore, these sanctions were not addressed in the aforementioned state proceeding.  *See* Dkt. No. 15-3 at 11.  "A Court may abstain under the principles of comity and federalism when, even though the *Younger* requirement that there be an ongoing state proceeding is not met, 'the equitable relief sought would inappropriately require the federal court to supervise institutions central to the

state's sovereignty.'" *Kunz v. New York State Com'n on Judicial Conduct*, 356 F. Supp. 2d 188,

194 (N.D.N.Y. 2005) (quoting *Miller v. Silbermann*, 951 F. Supp. 485, 491 (S.D.N.Y. 1997)).

Plaintiffs are improperly attempting to collaterally attack the decision of a state court.  The

remedy available to Plaintiffs from the sanctions imposed by Defendant Becker was to appeal to

the Appellate Division, which they did unsuccessfully.  *See Adams v. Bracci*, 100 A.D.3d 1214

(3d Dep't 2012).

       Plaintiffs ask for a substantial amount of injunctive, declaratory and mandamus relief,

over Defendant Becker that would demand direct involvement in the administration of state

courts by a federal court.  This "demand is precisely the kind of interference that *'Younger v.*

*Harris* . . . and related cases sought to prevent.'" *Kunz*, 356 F. Supp. 2d at 194 (quoting *O'Shea v.*

*Littleton*, 414 U.S. 488, 500, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

       As to the second element of *Younger*, it is well settled that there is a compelling state

interest in the state regulating its own judicial system.  *See Spargo*, 351 F.3d at 75 (holding that

"few interests can be considered more central than a state's interest in regulating its own judicial

system"); *Landmark Comm. Inc. v. Virginia*, 435 U.S. 829, 848 (1978) (Stewart, J., concurring in

the judgment) (emphasizing that "[t]here could hardly be a higher governmental interest than a

State's interest in the quality of its judiciary"); cf. *Pincham v. Ill. Judicial Inquiry Bd.*, 872 F.2d

1341, 1347 (7th Cir. 1989) (stating that there is an "important state interest of preserving a fair

and impartial judiciary"), *cert. denied*, 493 U.S. 975 (1989); *Anonymous v. Ass'n of the Bar of the*

*City of New York*, 515 F.2d 427, 430 (2d Cir. 1975) (nothing that "[i]t would appear axiomatic

that the effective functioning of any court depends upon its ability to command respect not only

from those licensed to practice before it but also from the public at large"), *cert. denied*, 423 U.S.

863 (1975).

Plaintiffs further argue that if *Younger* abstention is legitimate, it is not applicable because "abstention is applicable only to state court proceedings, and not to proceedings in Commission for Judicial Conduct, which is not an equivalent of court proceedings, but is an administrative proceeding where Plaintiffs are not parties." *See* Dkt. No. 15-3 at 11.  It is well settled that Plaintiffs' argument, which contains no citations to any relevant authority, is directly contradicted by the prevailing law which states that administrative disciplinary proceedings are in fact judicial proceedings for purposes of the first element of *Younger*.  *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*., 457 U.S. 423, 433 (1982).  Further, the Second Circuit has held in *Spargo*, that a judicial conduct proceeding is the exact type of proceeding contemplated by *Middlesex*.  *See Spargo*, 351 F.3d 65.

Under the third element of *Younger*, the burden of proof is on the plaintiff to "demonstrate that state law bars the effective consideration of their constitutional claims."  *Id.* at 78; *see also Middlesex County Ethics Comm.*, 457 U.S. at 432 (holding that "a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims'") (quoting *Moore v. Sims*, 442 U.S. 415, 426, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979)).  In the case at bar, Plaintiffs have not met that burden.  Plaintiffs have not presented this Court with arguments or facts that would lead one to reasonably conclude that Plaintiffs' constitutional claims would be barred in State court.  Accordingly, the Court finds that *Younger* abstention is appropriate in this matter and precludes the Court from considering any of Plaintiffs' claims that are currently being litigated in a state proceeding.


**G.      New York State Law Governing Judicial Recusal and Disqualification**

Plaintiffs assert two causes of action alleging that (1) "New York State law governing

judicial recusal, disqualification and discipline is unconstitutional . . .", and that (2) the "statutory, regulatory and court rule scheme of recusal and disqualification of judges in New York is unconstitutional. . . ."  *See* Dkt. No. 5 at ¶¶ 247-48, 257-58 (emphasis omitted).

In New York, the statutory grounds for judicial disqualification are set forth in New York Judiciary Law § 14, which is entitled "Disqualification of Judge By Reason of Interest or Consanguinity."  Specifically, the statute provides that "[a] judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree."  N.Y. Jud. Law § 14.  In addition, New York's Code of Judicial Conduct provides that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned," including instances where "the judge has a personal bias or prejudice concerning a party."  N.Y. Jud. Law Canon 3(E)(1); 22 N.Y.C.R.R. § 100.3(E)(1) (same); *see also* 22 N.Y.C.R.R. § 700.5(c) ("A judge shall preside at such trial unless he is satisfied, upon challenge or *sua sponte*, that he is unable to serve with complete impartiality, in fact or appearance, with regard to the matter at issue or the parties involved").  Absent statutory grounds, the trial judge is the "sole arbiter of recusal;" the decision whether to recuse oneself is discretionary, *i.e.*, "within the personal conscience of the court." *People v. Moreno*, 70 N.Y.2d 403, 405-06 (1987) (citation omitted).  Further, the New York State Court of Appeals has observed that, absent statutory grounds, a trial judge's alleged bias, prejudice, or unworthy motives will not constitute grounds for recusal unless shown to affect the result.  *See id.* at 407 (citation omitted).  In fact, even where recusal may be the "better practice . . . to maintain the appearance of impartiality," the judge is still the "sole arbiter" of the decision. *See id.* at 406.

Most of Plaintiffs arguments regarding the constitutionality of New York's recusal and disqualification laws pertain to Defendant Becker's refusal to recuse himself in matters brought by Plaintiffs, which they claim violated their due process rights. *See* Dkt. No. 15-3 at 18-24. Moreover, Plaintiffs argue that making the judge the "sole arbiter of his recusal" is contrary to established federal law. *See id.* at 18-19 (citing cases). Further, Plaintiffs claim that they "would not have had to even come to federal court if they were not objects of *relentless* retaliation by an egregiously biased judge and if they had a right to litigate their claims in local courts in front of an impartial tribunal." *See id.* at 22 (emphasis in original).

"'[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level.'" *Brown v. Doe*, 2 F.3d 1236, 1248 (2d Cir. 1993) (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948) (bracketed text in original). Rather, due process requires the disqualification or recusal of a judge only in the most extreme cases of demonstrated bias or prejudice. *See, e.g.*, *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 821-22 (1986) (holding that a member of the Alabama Supreme Court was required to recuse himself from an action against an insurance company alleging bad-faith refusal to pay valid claim, given that the judge had pending at least one very similar bad faith refusal-to-pay action against another insurer in another court in the same state). Nor do mere allegations of judicial bias or prejudice state a due process violation. *See Brown*, 2 F.3d at 1248 (citing *Lavoie*, 475 U.S. at 820). Further, whereas "matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion," *Tumey v. Ohio*, 273 U .S. 510, 523 (1927), "[t]he constitutional validity of a judge's qualifications is not implicated unless the judge has a 'direct, personal, substantial pecuniary interest' in reaching a particular conclusion in a case." *Brown*, 2 F.3d at 1248 (quoting *Tumey*, 273 U.S. at 523).

40

In the present matter, the Court finds that Plaintiffs have failed to state a plausible cause of action regarding New York's disqualification and recusal laws.  First, to the extent that Plaintiffs allege that Defendant Becker violated their rights in refusing to recuse himself in previous cases, the claims are barred by the *Rooker-Feldman* doctrine in that they ask this Court to review and reject the judgment of the state court.  *See Green*, 585 F.3d at 101 (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)); *Smith v. Krieger*, 389 Fed. Appx. 789, 795 (10th Cir. 2010) (citation omitted).  Second, Plaintiffs claim that allowing the judge to be the "sole arbitor" of whether recusal is required is not contrary to federal law.  As stated by the Second Circuit,

> [d]iscretion is confided in the district judge in the first instance to determine whether to disqualify himself, *see Apple v. Jewish Hospital & Medical Center*, 829 F.2d 326, 333 (2d Cir. 1987).  The reasons for this are plain.  The judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion.  In deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case.  *See In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).  Litigants are entitled to an unbiased judge; not to a judge of their choosing.

*In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988).

Contrary to Plaintiffs' assertions, New York's judicial recusal and disqualification scheme sets forth a logical set of instances in which a judge must recuse himself or herself from a case, and provides for meaningful appellate review.  The touchstone of procedural due process is whether the State has provided "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).  The recusal process followed by New York meets these requirements.  There is a procedure and forum for parties to

seek the recusal of a justice believed to be biased and there is recourse for a justice's improper failure to recuse himself or herself from a case.

Based on the foregoing, the Court finds that Plaintiffs have failed to state a plausible cause of action regarding their constitutional challenges to New York's judicial recusal and disqualification rules. As such, the Court grants Defendants' motion to dismiss these claims.

## H.   Personal involvement

In addition to Defendants Mulvey and Lippman being entitled to dismissal because of judicial immunity, the Court finds that they lacked any personal involvement in the alleged unconstitutional acts.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation and other citations omitted). "'[W]hen monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.)). There is a sufficient showing of personal involvement of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See id.* (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

42

In the present matter, Defendant Mulvey is first mentioned in the due process claim against Defendant Becker. *See* Dkt. No. 5 at ¶ 224. This paragraph seemingly attempts to accuse Defendant Mulvey of condoning Defendant Becker's conduct by virtue of his position as the administrative judge for the district. *See id.* at ¶¶ 224, 283. Further, Defendant Mulvey is later mentioned where Plaintiffs accuse him of violating their constitutional rights in failing to remove Defendant Becker from Plaintiffs' cases. *See id.* at ¶¶ 320-22. Aside from the conclusory nature of these claims, these claims sound in *respondeat superior* and fail to demonstrate how Defendant Mulvey was in any way involved in Defendant Becker's alleged unconstitutional conduct. Plaintiffs fail to claim that Defendant Mulvey knew of the alleged unconstitutional conduct or how he was even made aware of the alleged conduct.

Further, the Court finds Defendant Lippman lacked any personal involvement in the alleged unconstitutional conduct. As discussed, Defendant Lippman is not responsible for the enforcement of the challenged provisions. Moreover, there are no allegations that he was aware of Defendant Becker's alleged unconstitutional actions or that Plaintiffs attempted to make him aware so that he could redress the situation.

Based on the foregoing, the Court finds that, in the alternative, Plaintiffs' claims against Defendants Mulvey and Lippman are dismissed for lack of personal involvement.

I.      **Plaintiffs' state-law claims**

In the amended complaint, Plaintiffs assert a claim for defamation and *prima facie* tort. *See* Dkt. No. 5 at ¶¶ 227-241.

Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of

needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted).  Since the Court has dismissed all of Plaintiffs' federal claims, it declines to exercise supplemental jurisdiction over their state-law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).


**J.      Plaintiffs' motion to amend/supplement the amended complaint**

In response to Defendants' motion to dismiss, Plaintiffs filed a motion to supplement the complaint "featuring new Plaintiffs, new Defendants, new factual situations that arose or became discoverable after the filing date of the Amended Complaint and new causes of action."  *See* Dkt. No. 15-4 at ¶ 5.  In addition to the original Defendants, in the proposed supplemental complaint Plaintiffs assert claims against the following individuals: (1) A. Gail Prudenty, Chief Administrative Judge of the State of new York; (2) Michael V. Coccoma, Chief Administrative Judge for Upstate New York; (3) James C. Tormey, Delaware County Supreme Court Justice; (4) Thomas Mercure, Chief Acting Judge of the Appellate Division, Third Judicial Department; (5) Karen Peters, Chief Judge of the Appellate Division, Third Judicial Department; (6) William Moon, Commissioner for the Department of Social Services, Delaware County; (7) Richard Harlem, Esq.; (8) Robert Harlem, Esq.; (9) Eric Jervis, Esq.; (10) Harlem & Jervis law firm; and (11) the United States of America.  *See* Dkt. No. 15-6.  Further, Plaintiffs seek to add Barbara O'Sullivan as a Plaintiff.  Ms. O'Sullivan is Plaintiff Bracci's mother.

As with the amended complaint, most of the new claims in the proposed supplemental complaint center around Defendant Becker's interactions with Plaintiffs in his judicial capacity, and state-court decisions and proceedings to which Plaintiffs object.  The supplemental claims also argue that, because of instances of obvious misconduct and bias, decisions and matters

44

presided over by judges other than Defendant Becker must be set aside.  *See, e.g., id.* at ¶¶ 202-206.  In one such allegation, Plaintiffs allege that although Justice Coccoma recused himself from one of Plaintiffs' cases, the fact that he assigned the judge to the case to replace him (Justice Tormey) dictates that Justice Tormey's decisions should be deemed void and vacated.  *See id.* at ¶ 206.  As to the addition of Barbara O'Sullivan as a Plaintiff, the supplemental complaint asserts that Defendant Becker violated her rights when he held that a New York State statute did not apply to her and thereby deprived her of custody of her grandchild.  *See id.* at ¶¶ 218-225.

Next, Plaintiffs attempt to add the United States as a Defendant.  *See id.* at ¶¶ 237-46.  Plaintiffs claim that the Anti-Injunction Act and "the part of 42 U.S.C. [§] 1983 prohibiting injunctions against judicial officers only were enacted contrary to Congressional authority" and, therefore, should be declared unconstitutional.  *See id.* at ¶ 246.  Specifically, Plaintiffs claim that these provisions violate Article I of the Constitution because Congress has the power to establish the lower federal courts, but it does not have the authority to "define the scope of their jurisdiction."  *See id.* at ¶ 241.  Further, Plaintiffs make a reference to the fact that the "U.S. Constitution prohibits establishment of Titles of Nobility[,]" apparently in an attempt to imply that restricting the availability of injunctive relief against judges somehow confers on them a title of nobility.  *See id.* at ¶ 243.

Next, Plaintiffs' proposed supplemental complaint asserts conspiracy claims against Defendants Becker and Lippman, as well as Richard Harlem, Robert Harlem, Eric Jervis, and Justices Coccoma, Mercure, Tormey, and Prudenty.  *See id.* at ¶¶ 255-65.  Plaintiffs claim that these newly named individual Defendants, who are Republicans, have conspired with each other in repeated attempts to "eliminate competing trial lawyers," preventing litigants from getting "justice," and to ensure that sanctions are improperly imposed on Plaintiffs.  *See id.*

Under Rule 15(d) of the Federal Rules of Civil Procedure, a motion to supplement a pleading is properly made "when a party seeks to plead events 'which have happened since the date of the pleading sought to be supplemented.'"  *Marcucci v. N.Y. Dist. Council of Carpenters Welfare Fund*, No. 97 Civ. 7406(LBS), 2001 WL 1622213, *2 n.3 (S.D.N.Y. Dec. 17, 2001) (quoting Fed. R. Civ. P. 15(d)) (other citation omitted).  In addition, a Rule 15(d) motion may be appropriate when the movant seeks to add new parties or claims arising from the new events.  *See Griffin v. City Sch. Bd. of Prince Edward Cty.*, 377 U.S. 218, 226 (1964) ("[I]t follows, of course, that persons participating in these new events may be added if necessary.  Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice").

Rule 15(d) motions are evaluated by the court under the same standards used to evaluate motions to amend pleadings under Rule 15(a), with leave "freely given when justice so requires." *New York State Nat'l Org. for Women v. Cuomo*, 182 F.R.D. 30, 36 (S.D.N.Y. 1998) (quoting Fed. R. Civ. P. 15(a)); *see also Forbes & Wallace, Inc. v. Chase Manhattan Bank*, 79 F.R.D. 563, 565 (S.D.N.Y. 1978).  Under Rule 15(a), a motion to amend a pleading should be denied, "if there is an 'apparent or declared reason — such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'"  *Dluhos v. Floating and Abandoned Vessel Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (other citation omitted); *accord Richardson Greenshields Sec., Inc. v. Lau*, 825 F .2d 647, 653 n.6 (2d Cir. 1987) (citation omitted). Similarly, a motion to supplement under Rule 15(d) should be denied where the supplementation is proposed in bad faith, or would be unduly prejudicial or futile.  *See Quaratino v. Tiffany &*

46

*Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citing *Foman v. Davis*, 371 U.S. at 482).  The decision whether to grant leave to amend or supplement a pleading is within the sound discretion of the court.  *See id.* (citation omitted).

      An amendment or supplementation of a pleading is considered "futile" when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 468 (E.D.N.Y. 1998), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).  Thus, if the proposed supplemental complaint would be subject to "immediate dismissal" for failure to state a claim, the court should not permit the supplementation.  *See Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999).  If, however, the party seeking to supplement "'has at least colorable grounds for relief, justice . . . require[s]'" that its motion be granted.  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir. 1984) (citation omitted).  Futility is generally adjudicated without resort to any outside evidence.  *See, e.g., Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss"); *see also Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994)).

      In the present matter, nearly all of Plaintiffs' proposed additions contained in the proposed supplemental complaint fail to state plausible claims for the reasons discussed in dismissing the amended complaint, *i.e.*, *Younger* abstention, the *Rooker-Feldman* doctrine, absolute judicial immunity, and lack of personal involvement.  To the extent that Plaintiffs have asserted new causes of action against, the Court will address the merits of the proposed allegations.

### 1. Plaintiffs' conspiracy claims against Defendants Becker, Moon and Delaware County

Plaintiffs Bracci and O'Sullivan allege that Defendants Becker and Moon "conspired with private actors, Plaintiff O'Sullivan's siblings Peter Bracci and Mary Bracci Hallock, as well as with Delaware Assistant County Attorney Peter Kirkwood to violate Plaintiffs['] constitutional right of family integrity, due process of law and redress of grievances by an impartial tribunal." *See* Dkt. No. 15-6 at ¶ 214.  Plaintiffs allege that these Defendants conspired to conceal a report fabricated by Defendant Becker "or under his guidance," which shows an "extrajudicial source of bias which influenced Defendant Becker's adjudication in Family Court, County Court and Supreme Court against Plaintiffs Bracci, O'Sullivan and Plaintiff[ ] Bracci's counsel Tatiana and Frederick J. Neroni."  *See id.* at ¶ 215.  Plaintiffs seek "injunctive relief against enforcement of Defendant Becker's void and disqualified court orders, and an injunctive relief ordering Defendant Moon to release to Plaintiff Bracci and Plaintiff O'Sullivan their respective files in possession of Delaware County Department of Social Services."  *See id.* at ¶ 217.

To sustain a cause of action for conspiracy to violate a plaintiff's civil rights under section 1985(3), a plaintiff must allege and demonstrate that defendants acted with racial or other class-based animus in conspiring to deprive the plaintiff of his equal protection of the laws, or of equal privileges and immunities secured by law.  *See United Bhd. of Carpenters & Joiners, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834-39 (1983); *see also Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) (citation omitted).  A plaintiff asserting a claim under section 1985(3) need not necessarily offer proof of an explicit agreement; a conspiracy can be evidenced circumstantially, through a showing that the parties had a "'tacit understanding to carry out the prohibited conduct.'"  *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (quoting *United State v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988)) (other citations omitted).  This

notwithstanding, in order to properly plead such a claim, a plaintiff must make more than "conclusory, vague, or general allegations of conspiracy." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (citation omitted).

"'To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Benitez v. Ham*, No. 9:04-CV-1159, 2009 WL 3486379, *18 (N.D.N.Y. Oct. 21, 2009) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right. *See Malsh v. Austin,* 901 F. Supp. 757, 763-64 (S.D.N.Y. 1995) (citation omitted). Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights. *See id.*; *see also Friends of Falun Gong v. Pacific Cultural Enterprise, Inc.*, 288 F. Supp. 2d 273, 279 (E.D.N.Y. 2003) (citations omitted); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (citation omitted).

To withstand a motion to dismiss, the conspiracy claim must contain more than "'conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights[.]'" *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quotation omitted); *Shabazz v. Pico*, 994 F. Supp. 460, 467 (S.D.N.Y. 1998) (holding that a mere allegation of conspiracy with no facts to support it cannot withstand a motion to dismiss). Specifically, the plaintiff must provide some factual basis supporting a "meeting of the minds," such as that the defendants "entered into an agreement, express or tacit, to achieve the unlawful end[;]" the plaintiff must also provide "some 'details of time and place and the alleged effects of the conspiracy.'" *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (quoting *Dwares v. City of New York*, 985

F.2d 94, 100 (2d Cir .1993)).

To the extent that Plaintiffs are attempting to allege a conspiracy under 42 U.S.C. § 1985, their claim must fail because they do not allege that Defendants acted with racial or other class based animus in an effort to deprive them of their constitutional rights.  *See United Bhd. of Carpenters & Joiners, Local 610, AFL-CIO*, 463 U.S. at 834-39.

Similarly, Plaintiffs' proposed section 1983 conspiracy claim is supported by only conclusory and vague allegations of a conspiracy, which is insufficient to state a plausible claim. *See Zaidai*, 723 F. Supp. 2d at 515 (citation omitted).  Plaintiffs appear to allege that Defendant Moon concealed a report that Defendant Becker fabricated in 2001 in favor of his paying client Mary Bracci Hallock.  *See* Dkt. No. 15-6 at ¶ 215.  Such conclusory assertions are clearly insufficient to state a plausible conspiracy claim.  Further, to the extent that the alleged conspiracy occurred in 2001, the claim is clearly barred by the three-year statute of limitations applicable to section 1983 claims in New York.

Moreover, the relief sought by Plaintiffs make clear that they are attempting to have this Court review and reject judgments made by Defendant Becker against Plaintiffs in Family Court, County Court and Supreme Court, which is clearly prohibited by the *Rooker-Feldman* doctrine. Finally, to the extent that Plaintiffs are seeking relief against Defendant Becker, he is still protected by absolute judicial immunity.

Based on the foregoing, the Court finds that allowing Plaintiffs' to supplement their amended complaint to allege a conspiracy under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985 would be futile.


### 2. Plaintiff O'Sullivan's claim against Defendant New York State

Plaintiffs assert that Defendant New York violated Plaintiff O'Sullivan's rights in that "New York Family Court Act Section 812(1) is unconstitutional as applied by Defendant Becker to Barbara O'Sullivan as a grandmother of a child born out of wedlock." *See* Dkt. No. 15-6 at ¶ 218. Plaintiffs claim that Defendant Becker denied Plaintiff O'Sullivan an order of protection against Ryan Adams, who is the father of Plaintiff O'Sullivan's grandchild, because he deemed that Mr. Adams is not related to her. *See id.* at ¶ 220. Further, Plaintiffs claim that Defendant Becker actually determined that Mr. Adams was entitled to protection from Plaintiff O'Sullivan, dismissed her petition on jurisdictional grounds, and then ruled against her in a case in which she was not a party.

Again, Plaintiffs are asking this Court to review and reject decisions issued by Defendant Becker, in clear violation of the *Rooker-Feldman* doctrine. Plaintiffs' remedy was to appeal the adverse decisions in state court, which they either did and lost or failed to do.

Plaintiffs also claim that this provision of the Family Court Act is unconstitutional on its face "and as applied to grandmothers of children born out of wedlock, and mothers of ex-girlfriends or ex-boyfriends, as opposed to mothers of ex-spouses who are included into the protective reach of the Family Court Act 812 under the 'affirnity' definition." *See* Dkt. No. 15-6 at ¶ 225. This claim must also fail. First, to the extent that the claim is brought against New York state and not a state official who has some connection to its enforcement, the claim is barred by the Eleventh Amendment. *See in re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 372-73 (quotation omitted).

Even if this claim was brought against the proper officer as required by *Ex parte Young*, it is clear that the claim would still fail. A quick search of case law discussing this section reveals that the individuals that Plaintiffs claim are being denied equal protection of law are generally

covered by the statute's "intimate relationship" provision.[10]  *See* N.Y. Fam. Ct. Act § 812(1)(e);

*see also Morales v. Roman*, 30 Misc. 3d 297, 299 (N.Y. Fam. Ct. 2010) (holding that relationship

between paternal grandparent, the child's mother and child born out of wedlock was "sufficiently

'intimate' to be captured by FCA § 812(1)(e)").

       As the Supreme Court has observed, "[t]he Fourteenth Amendment's promise that no

person shall be denied the equal protection of the laws must coexist with the practical necessity

that most legislation classifies for one purpose or another, with resulting disadvantage to various

groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996) (citations omitted).  Accordingly,

the Supreme Court has "attempted to reconcile the principle with the reality by stating that, if a

law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the

legislative classification so long as it bears a rational relation to some legitimate end." *Id.*

(citation omitted); *see also Vacco v. Quill*, 521 U.S. 793, 799 (1997) (holding that the Equal

Protection Clause "embodies a general rule that States must treat like cases alike but may treat

unlike cases accordingly" (quotation omitted)).  Where a state statute burdens a fundamental right

or targets a suspect class, however, it is subject to heightened scrutiny under the Fourteenth

Amendment's Equal Protection Clause.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S.

432, 440 (1985).

       In the present matter, the challenged statute is intended to protect against domestic

violence and provides the New York State Family Court's (which are courts of limited

jurisdiction) with subject matter jurisdiction to handle some domestic violence matters.  *See* N.Y.

---

[10] The Court notes that in Plaintiffs' proposed supplemental complaint, they quoted four of
the five provisions of section 812(1) of the Family Court Act but failed to quote or even allude to
the one provision that might be applicable to Plaintiff O'Sullivan, *i.e.*, the "intimate relationship"
provision.

Fam. Ct. Act § 812 at comments.  Insofar as Plaintiffs' claim is concerned, it does not burden a fundamental right or target a suspect claim.  Although the right to familiar association is undoubtedly a fundamental right, the Court is unable to find any authority for the proposition that a grandparent has a fundamental right to a protective order against the father of the grandchild who was never married to the grandparent's daughter.  As such, rational basis review applies and the Court finds that it is entirely reasonable for the state to differentiate between individuals who are related by affinity and those who are not when attempting deal with the problem of domestic violence.  Individuals in Plaintiff O'Sullivan position are provided protection by the statute, so long as they have a sufficiently "intimate relationship" to warrant such protection.  *See Morales*, 30 Misc. 3d at 299 (holding that relationship between paternal grandparent, the child's mother and child born out of wedlock was "sufficiently 'intimate' to be captured by FCA § 812(1)(e)"); *Jessica D. v. Jeremy H.*, 77 A.D.3d 87, 88-89 (3d Dep't 2010) (discussing the factors to be considered when determining if a relationship qualifies as "intimate") (citation omitted).  When such an "intimate relationship" is lacking, the petitioner may obtain the relief they seek from a criminal court.  *See* N.Y. Fam. Ct. Act § 812 at practice commentaries.

Based on the foregoing, the Court finds that Plaintiffs have failed to allege a plausible constitutional challenge to N.Y. Fam. Ct. Act § 812(1).

### 3. Plaintiffs' claim against the United States of America

Plaintiffs' proposed supplemental complaint alleges that the "Anti-Injunction Statute" and the 1996 amendment to 42 U.S.C. § 1983 further limiting injunctive relief against judicial officers are unconstitutional.  *See* Dkt. No. 15-6 at ¶¶ 237-246.  Plaintiffs claim that Article I provides Congress with the authority to establish the lower courts, "but not to define the scope of

their jurisdiction." *See id.* at ¶ 241.  Further, Plaintiffs allege that "[p]utting judges above injunctive relief under 42 U.S.C. 1983 which is available against all other classes of citizens, is in the nature of creating titles of nobility and unconstitutional." *See id.* at ¶ 244.

Contrary to Plaintiffs' baseless assertions, it is well-settled that "it is Congress, and not the courts, that possesses the power to define the scope of the courts' jurisdiction." *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 266 (2d Cir. 2007) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155-56, 161, 110 S. Ct. 1717, 109 L. Ed. 2d 135 (1990)).  Further, it is beyond question that the common law and statutory provisions that Plaintiffs are attempting to challenge are constitutional.  *See Amalgamated Clothing Workers of Am. v. Richman Bros.*, 348 U.S. 511, 515-16 (1955); *Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'r*, 398 U.S. 281, 286-87 (1970). Plaintiffs' allegation that placing judges above injunctive relief "is in the nature of creating titles of nobility" exemplifies the frivolous and groundless nature of this action.

Based on the foregoing, the Court finds that Plaintiffs have failed to allege a plausible claim against the United States of America.

### 4. Plaintiffs Tatiana and Frederick Neroni's conspiracy claims against Defendants Becker, Richard Harlem, Robert Harlem, Jervis, Coccoma, Mercure, Tormey, Lippman, and Prudenty

Plaintiffs claim that these Defendants, who are Republicans, "engaged in an embarrassing conspiracy to prevent litigants to get justice and to arrange that a judgment comes out a certain way, in order to keep the no less embarrassing, premature, illegal and pre-judged, or fixed, disbarment of an attorney to stay in place, in order to please a politically powerful law firm." *See* Dkt. No. 15-6 at ¶ 263.  Plaintiffs allege that this conspiracy is to "get even with [them]" for the allegations of misconduct they raised against Defendant Becker and because of Defendant Becker's jealousy regarding Plaintiff Frederick Neroni's success as a trial attorney.  *See id.* at ¶

54

258.

      This conspiracy claim fails for the same reasons that Plaintiffs' first conspiracy claim fails. The section 1985 conspiracy fails because Plaintiffs have failed to plead that Defendants acted with racial or other class-based animus. *See United Bhd. of Carpenters & Joiners, Local 610, AFL-CIO*, 463 U.S. at 834-39. As to Plaintiffs' section 1983 claim, the vague allegations, unsupported by specific factual allegations of any kind, clearly fail to state a plausible conspiracy claim. To maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Aside from vague assertions of jealousy and the fact that some of the Defendants are friends and Republicans, Plaintiffs provide no non-conclusory allegations from which may be plausibly inferred that there was a "meeting of the minds," *i.e.*, that Defendants came to an agreement to violate Plaintiffs' constitutional rights. *See Green v. McLaughlin*, 480 Fed. Appx. 44, 46-47 (2d Cir. 2012) (citations omitted).

      Finally, this claim appears to be nothing more than an attempt to circumvent the multitude of reasons why their amended complaint must be dismissed. The only substantive allegations relate to Defendant Becker, and Plaintiffs cannot avoid the fact that their suit against him is barred by, among other things, absolute judicial immunity, the *Rooker-Feldman* doctrine and *Younger* abstention, by making vague and conclusory assertions alleging a conspiracy. *See Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000) (holding that you cannot circumvent the fact that grand jury witnesses are granted absolute witness immunity by alleging a conspiracy to present false testimony under section 1983); *Davit v. Davit*, 173 Fed. Appx. 515, 518 (7th Cir. 2006) (holding that the plaintiff could not circumvent the judicial immunity doctrine by bringing his claims under the RICO Act rather than 42 U.S.C. § 1983).

Based on the foregoing, the Court finds that Plaintiffs have failed to allege a plausible conspiracy claim.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' federal claims are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiffs' state-law defamation and *prima facie* tort claims are **DISMISSED without prejudice**; and the Court further

**ORDERS** that Plaintiffs' motion to supplement its amended complaint is **DENIED** as futile; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 9, 2013
        Albany, New York

Mae A. D'Agostino
U.S. District Judge